Sutherland, J.
I concur with the chief justice, except as to. that branch of the case which relates to putting off the trial.
The principles upon which the courts are to act in postponing the trial of a cause, on account of a material witness being absent, are not disputed. In general, it is sufficient, 1, That the witness required be material; 2. That there have been no laches in procuring his attendance; and 3. That there be reasonable ground to suppose his attendance can be procured at the time to which it is proposed to put off the trial. Where there is no reason to suspect that the object of the application is mere delay, and the trial has not been .put off by a previous application of the party, the general affidavit is all that should be demanded; *which briefly states why the witness has not been already obtained: that the party expects to be able to procure his attendance thereafter; that the witness is material to the defense of the cause ; and that without his testimony the party cannot proceed to the trial, as he is advised by counsel and believes. The rule is substantially the same both in civil and criminal cases; though, in the latter, the authorities all agree that the matter is to be scanned more closely, on account of the superior temptation to delay, and escape the sentence of the law. The distinction is certainly of no great consequence. In a case where the common affidavit applies, the court has no discretion. The postponement is a matter of right, resting on what has become a principle of the common law. But where there has been laches, or there is reason to suspect that the object is delay, the judge at the circuit may then take into consideration all the circumstances; and grant or deny the application *390 at his pleasure. When the subject takes this turn, the application ceases to be a matter of right; and rests in discretion. A lattitude is to be indulged which does not attend a case where the common affidavit applies. One of the usual conditions is, that the testimony of the absent witness should be stated at large; so that its materiality may be seen and judged of by the court.
Accordingly, we are first to inquire, in this case, whether the judge was bound to put off the trial on the common affidavit. This is not a very material inquiry; for the testimony of the witness was, in fact, disclosed particularly ; the judge all along treating the case as one of suspicion; and which called, therefore, for explanation. In this I think he was right. The neglect to make application for a commission at May term, was one ground calculated to excite suspicion. This cause has been twice tried before; and the materiality of Gen. Swift’s testimony must have been well known to these defendants. ISTo attempt was made to account for the omission. Gen. Swift was a foreign witness. He was beyond the reach of our process. He resided in another state, out of onr jurisdiction. * According to the strict legal mode, his testimony could be obtained only through the medium of a commission. If the defendants had deemed him material at May term, the commission would naturally have suggested itself to their counsel; and such a course would have obviated the suspicion that his absence was resorted to at the trial, by way of pretence or after thought.
It is said that Gen. Swift declared his readiness to attend, on notice. But no assurance of this kind directly to the parties, is sworn to. It is, at most, a declaration to, or message through a third person, not very satisfactorily established. Though these circumstances might have been entitled to weight in the estimation of the parties, and may have regulated their conduct, they are certainly not of sufficient consequence to justify their supineness. They let a term pass, without the step which alone could, with any great certainty, secure Gen. Swift’s evidence; and go down to the circuit with this very suspicious circumstance *391 against them. Had they deemed him material, it is to be presumefi that a motion would have been made for a commission> This all-important witness is heard of for the first time when the cause is called at the circuit. Ho motion in May term to postpone; no motion for a commission. A vacation- intermediate the May, and August term, must be wasted without the ability to take one legally efficient ' step in procuring the testimony. Here were circumstances calculated to operate powerfully on the mind of the judge; to excite a suspicion that the application was the pretence of the moment, which had not before been thought of.
It has been urged that the defendants were thrown off their guard, by the declaration of the district attorney that he would indict de novo ; and proceed on the criminal side. Probably this declaration was intended for no such purpose. Indeed, we should assume, I think, that it was not. Had the parties realized the importance of Gen. Swift’s evidence, we fiave n0 right to suppose they would have been misled by such a circumstance; and I cannot but regard *the case as standing upon the same ground as if no such declaration had been made.
In The King v. D’Eon, which was the case of foreign witnesses residing in France, lord Mansfield puts it as one ground for denying the application, that no attempt had yet been made to obtain their attendance. Issue had not been joined in that cause till the 29th of June, when the cause was immediately noticed for trial. On the 30th of June the motion was made. A term of only one day had elapsed, from the time of issue; and the defendant had not appeared and been served with a copy of the libel till the 8th. If delay for so short a time was cause of suspicion in that case, much more so in this, where the parties must have been conscious that they would be pressed to a trial.
Another circumstance entitled to consideration was the nature of this case, and of the transactions to be given in evidence. It was apparent that Gen. Swift could know nothing which might not be reached through the medium of other witnesses. The facts had been gone over upon previous trials; and the particulars of Swift’s testimony *392 were now disclosed. It was doubtless seen by the judge that most, if not all of them, might be shown by others; a circumstance which must have operated upon his mind. The transactions in question were of a public character, or at least, of a nature much more likely to be known than acts which usually pass under the eye of a single individual. It is easy to see how a subscribing witness to the execution of a deed may be essential; so of any single narrow ground of defense, or any important or decisive fact; an alibi for instance. But where the circumstances are numerous, and probably known to many, these motions to delay trials for the absence of one, come with diminished force.
Yermilyea stated that he could not tell what he should rely on as expected from Swift, till he knew what the public prosecutor inténded to prove. This was certainly calculated to induce a suspicion, that the motion to postpone was rather a speculation upon what Swift would *swear to, than resting upon any certain knowledge of his materiality.
Another reason against postpo ning was, the great number of witnesses who had been sworn on the previous trials; and who, it was apparent, would be required on the trial in question, as more or less material. In such a case, to postpone a trial, for the absence of any single witness that the party will make affidavit is essential, would operate not only as a great delay; but the denial of any hearing at all. It is hardly to be supposed that, in such a case, the cause can ever be moved on for trial, without some one of the witnesses being absent upon good cause.
The motion, too, which the defendants made for a separate trial, I understand as implying a readiness to proceed.
The question is not whether we should have granted or denied this application, had we been directly applied to in the first instance. It was an application, addressed to the sound discretion of the judge, to be exercised upon all the circumstances. Though we think that we might have postponed the trial, it does not follow that we should now grant a new trial. If the discretion of the judge be not regulated by well settled rules of law, which have been *393 violated, no greater latitude has been taken than should be allowed; the exercise of discretion which we ought not to coerce or control.
Under the circumstances, the judge thought, not that the trial should be forced on with the absolute deprivation of Gen. Swift’s evidence; but that it should be tried, on the district attorney stipulating to admit that Gen. Swift would testify, upon the trial, to the facts supposed in the defendant’s affidavits. Till this concession was made, I do not understand the judge as deciding definitely one way or the other. He had barely expressed his opinion as the question progressed, upon its state and appearance at the time. It is said, that the admission of the district attorney, with the reservation attached to it, of a right to impeach -the evidence to be received under it, is not equivalent to the testimony of Gen. Swift upon commission. Perhaps it is not precisely so. 'Want of personal explanation *from the witness, however, applies equally to both cases. It is said the jury could not shut their eyes against the fact that Gen. "Swift'had not, in truth, sworn to anything. This might have been so. We cannot say exactly what view the jury may have taken of the case. But I think too much importance has been attached to the evidence by which Gen. Swift’s credibility was sought to be shaken. I do not understand it as amounting to anything more than a declaration by him, that he knew little or nothing on the subject. Under the circumstances, this could have no great weight. The declaration was made after he was indicted for criminality in the very transactions relative to which the defendants say he can testify; and while his trial was pending. The jury could not but see the influence that prompted such declarations. It was their duty to act without considering Gen. Swift’s testimony as materially impeached by such a circumstance; and, I think, they must have so acted If so, -the admission operated substantially as a concession of the facts themselves,- to which it was said the -witness would testify. The defendants -had the benefit of them, at least, as fully as if they had been sworn to on commission. At any rate, considering the question as still progress! re, *394 when the stipulation was made, I think the judge had a right to exact a trial. I have already endeavored to show that he might have refused, in his discretion, absolutely, to postpone the trial. Having this right, of course, he had the inferior right to order it on upon certain conditions imposed on, or agreed to by the district attorney.
I must not be understood as advocating the idea that such an admission could, in any degree, warrant the ordering on a trial, where the common affidavit would apply. Nor would I be understood as saying, that I should not, had the application been made to me, holding this circuit, have put off the cause. All the decisions in the English books are upon cases of original applications to the court. I do not remember a single case, where a new trial was granted, on appeal, from a decison at nisi prim. The case at bar was peculiarly one of discretion; and before we can interfere, *it should clearly appear that there has been an abuse of discretion. We are called on so to apply our own discretion, as to overrule that of the judge; and that, too, when it seems very probable there were various circumstances before him, by which he might properly be guided; but which we cannot appreciate. The nature of the case, the character of the testimony, the number of witnesses, the length of the trial, the time already consumed on former trials, and the various means which the defendants had to supply or nearly supply the want of Gren. Swift, by ether evidence; these, and many other considerations, might properly have had their weight in this case of discretion. We do not lightly interfere with discretion, on appeal. The reluctance of this court to do so, is evinced by the whole current of authority.
Under these various views of the case, I have come to the conclusion that a new trial ought not to be granted. I am happy that this result can, whether right or wrong, work no prejudice to the defendants; for I understand both my brethren to have come to a different conclusion.
Woodworth, J.
It has already been stated, that we
are unanimous in regarding all the grounds taken for a new *395 trial as untenable, except the refusal of the circuit judge to pUt ^ ^.r;ap Qn ^is head, we are to be satisfied ^gther there were laches in the defendants; and if not, whether the stipulation of the district attorney was a fair equivalent for the testimony of Gen. Swift. We have nothing to do with the merits; but only with the question, whether the legal course of practice has been pursued, to reach those merits. The defendants are,, in common with every other citizen, entitled to a trial according to the law of the land; and if the rules of that law have been mistaken, I hold it my duty to give them a new trial.
What was the state of the cause when the motion was made to postpone? True, there had been two previous trials at the oyer and terminer; but is there a doubt that this was to be considered a first attempt to try, for all the purposes of this question ? On the first the jury disagreed; *on the second there was a conviction; but a new trial was granted, and the cause retained on the civil side. So far, I do not see how laches can be imputed. The defendants could not pre-judge the consequences. I admit, that after the decision in favor of a new trial, we are to look at the conduct of the defendants, and scan it critically. They go down to the circuit within a few days after they are apprized of the new trial; there they make affidavits, containing a full disclosure of what their absent witness will proye. To this there was no answer.
But we are told that a commission should have been moved in May term. Mow, I admit the defendants were bound to ordinary diligence, but nothing more. This cause was put at issue the last week of May term. All the non-enumerated days, within which alone, according to the common practice of the court, this motion could have been made, had passed. From Friday, the day when this cause took its final direction, till Tuesday of the next week, the judges were engaged night and day at their chambers; coming into court only at short intermissions, for the purpose of delivering opinions. If laches could otherwise be predicated of omitting to move a commission at that term, these circumstances are an answer. It is not the course of *396 this court, on questions of diligence, to hold so strict a rein. The declaration of the district attorney might very have thrown the defendants off their guard. But put this out of view; to hold the parties to'move with such rapidity, would be going much beyond anything we should require in a civil cause. They could not know that we would hear the motion, after the regular day had passed. "We had a right to deny it, on the ground that it was out of season. On so late an issue in a civil cause, (and this stands on the same ground in strictness,) no counsel would have thought of moving for a commission till this term; when, under the circumstances, we might have made such commission a stay of the proceedings.
But suppose negligence as to the commission. It is not such neglect as affected the parties’ rights. They were not bound to take up satisfied with a commission. They "-were entitled to a full and fair opportunity of obtaining the witness’ personal attendance, and the benefit of his testimony ore tenus. In a fair case, the party may always apply to put off a cause for his purpose, even where he has procured a commission. Laches, therefore, cannot avail, unless they are applied to this point. A party cannot be driven to take out a commission. It seems to me this is well settled. It is fortified by the case of the chevalier D’Eon. One reason given there against the motion, was, that the king of France would not suffer the witnesses, who were in his service, to appear and testify. This expression pre-supposes that the party may put himself on the personal attendance of his witnesses, instead of a commission, or a proceeding in nature of a commission. In that case, too, as in this, the witnesses lived out of the jurisdiction within which they were to testify. Yet the court conceded that, on a first application, this, of itself, was not cause for denying the motion. If the application be a second one, I admit the rule does not apply. The trial now in question, was not only to be regarded as a first trial, for the reasons which I have mentioned ; but Gen. Swift was, in truth, a party to this indictment, and a,n incompetent witness, until after the second trial at the oyer and terminer. If an assurance on *397 the part of Gen, Swift was necessary, that he would listen £0 reqUest 0f party, and attend as a witness for him, we have it. It is said the evidence on this point is slight; hut-it is shown-that he -sent a message to one of the parties, promising to attend. ■ I cannot say that this is all a pretence. It might have been by letter. If the defendants had reasonable ground to hope for his voluntary attendance, it is sufficient. The truth and fairness of the affidavits are not impeached, in this respect. Had the experiment been tried, and the witness had failed of attending, I admit that a second postponement should not be granted in this case of a foreign witness. The party should secure himself against consequences, by a commission.
We must be confined to the facts before us. I do not feel authorized to indulge in presumptions. I cannot speenlate *on the question, whether the defendants might not have been able to prove the facts sought -through Gen. Swift, by other witnesses. Such a course appears to me to be contrary to .all experience.
This case has been treated as if the circuit judge had a view of various facts not now before us ; and which controlled him in the exercise of his discretion. Let us attend to this. I understand the case very differently. He decided on the affidavits produced. Ho question was then before him as to the admission on the part of the prosecution. The result is, that the judge who had presided on both of the previous trials¡ with all the facts before him, held the application to be completely sustained. We, then, have Ms opinion, that, in the exercise of a sound -discretion, the trial should be postponed. This involves a direct negative upon all -laches.
Another view of the case here very naturally suggests itself. The judge having pronounced the affidavits sufficient, ought we now to listen to the imputation of laches, • even,supposing them to have appeared at the circuit ? Had the judge taken a different course, and rejected the motion on the ground of apparent laches, the defendants might have explained the imputations; and shown, that what had this appearance, arose from causes which diligence *398 could not conquer. As the cause stood, after the decision in favor of the affidavits, all explanation was put out of the question, by that very decision. It would have been impertinent. Explanations, too, not required at the circuit, are the last that would be thought of being given here. In Hooker v. Rogers, (6 Cowen, 577,) we held, as one reason against hearing an objection to a similar affidavit, that it was not raised at the circuit.
I admit, that in reviewing the decision, which is considered as resting upon discretion, we should be careful not to overrule it, unless the rules of law have been violated. What is judicial discretion ? It is an enlightened view of the case, and a correct application of the known rules of law. In the view which I have of this case, it can hardly be said there was a discretion. The application seems to "be as plainly within certain fixed and known rules, as almost any other. Discretion itself, however, is not arbitrary. That, too, is confined by rules of law.
We then come to the question, whether the stipulation of the district attorney should have been received as an answer to the motion. I do not understand this to have entered into the views of the judge at all, in determining that the cause should go off. That decision was absolute, that the defendants had a right to the postponement. Nor do I understand the decision, that the stipulation should be received, as at all connected with the first decision; or as founded in the weakness or suspicion of the defendants’ case. It must, then, have gone upon the notion, that it was a full and fair substitute for the oral evidence of Gen. Swift. The defendants were entitled to the oral evidence, or what was equivalent; or they were entitled to nothing. Is it, then, an answer, to say “ Gen. Swift would so swear ?” Is such a mode of receiving a witness’ testimony known to the law ? Should time be taken, at this day, to show the difference between such evidence, and the oral testimony of a witness ? to demonstrate the vital importance of an open and public examination before a jury ? where the witness speaks not only in direct language, but by his appearance, his explanations, his corrections of what may be *399 doubtful, inconsistent, or apparently untrue? Such wag the testimony to which the defendants were entitled, if to any; not evidence reflected through their affidavits, subject besides to have its already diminished and feeble force destroyed by adverse testimony. A witness is called. He is impeached'in certain particulars. Is he not uniformly called again to correct and to explain ? Is it not familiar with the whole profession, that such a course is material, and many times essential to the ends of justice ? We all know the superior weight of a witness attending in person; how important it is, especially in a complicated matter, that he should be on the spot to obviate seeming contradictions. There seems to me no doubt that this admission was very far from giving the defendants an equivalent for Gen. Swift’s personal testimony. Witnesses *were introduced, the tendency of whose evidence was to show that he knew nothing; that he iyas entirely unacquainted with the transactions in controversy. Various explanations might have been given to that evidence by Gen. Swift. I know of no rule, which, in a case like this, stops short of an absolute concession of the facts stated in the affidavit of the party. The case of Brill v. Lord,, (14 John. 341,) cited by the chief justice, virtually concedes this principle.
Such being my views of the case, I concur with the chief justice, that a new trial should be granted.
New trial granted.
On the opinion of the court being pronounced as above,
Ogden moved that a commission issue for the examination of Gen. Swift, and that the rule for such commission be made a part of that for a new trial.
Rule accordingly.